Anthony Paduano (AP 8400)
Steven Castaldo (SC 0520)
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
Attorneys for Petitioner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
BRIAN J. RAFFERTY,                                              :

                Petitioner,     :     11 CV 00133

   -and-                                                        :

XINHUA FINANCE LIMITED, JAE LIE,                                :
ALOYSIUS T. LAWN, DANIEL J. CONNELL,
JEANNE L. MURTAUGH, DAVID WANG, FREDY                           :
BUSH, NICHOLAS W. SCHIFFLI, JR., JOHN
MCLEAN, WU JI GUANG, and CHEN XIAOLU,                           :

                Respondents.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## PETITION

Petitioner, Brian J. Rafferty ("Rafferty" or "Petitioner"), by his undersigned attorneys, as and for his Petition alleges:

### Introduction

1. This action is for a temporary restraining order and a preliminary injunction to maintain the status quo pending resolution of an arbitration proceeding between Petitioner and respondents Xinhua Finance Limited ("XFL"), Jae Lie, Aloysius T. Lawn, Daniel J. Connell, Jeanne L. Murtaugh, David Wang, Fredy Bush, Nicholas W. Schiffli, Jr., John McLean, Wu Ji Guang, and Chen Xiaolu (collectively,

the "Respondents") that is currently pending before the American Arbitration Association, captioned <u>Brian J. Rafferty v. Xinhua Finance Limited, Jae Lie, Aloysius T. Lawn, Daniel J. Connell, Jeanne L. Murtaugh, David Wang, Fredy Bush, Nicholas W. Schiffli, Jr., John McLean, Wu Ji Guang, and Chen Xiaolu</u>, AAA Case No. 50-116-T-000780-10 (the "Pending Arbitration").

       2.      The dispute arises out of a scheme by Respondents to fraudulently abscond with the assets of XFL's former wholly-owned subsidiary, Taylor Rafferty Associates, Inc. ("Taylor Rafferty") and take such proceeds to China, leaving Taylor Rafferty without sufficient assets to cover its debts and obligations to Petitioner, including an outstanding Judgment.  XFL, as the parent company of Taylor Rafferty, sold the assets of Taylor Rafferty (the "Asset Sale") to D.F. King & Co., Inc. ("D.F. King").  XFL structured the Asset Sale in such a way as to defraud Taylor Rafferty's creditors, including Petitioner.  As a result of the Asset Sale, Taylor Rafferty is without sufficient assets to pay Petitioner the debts owed to him.  XFL -- as the sole shareholder and entity controlling Taylor Rafferty and as the entity receiving all of the proceeds of the sale of Taylor Rafferty's assets – and its Directors, the Individual Respondents, are liable to Petitioner for the obligations of Taylor Rafferty.

       3.      As a result of the improper termination of his employment, Petitioner obtained a Judgment from the Supreme Court of the State of New York, County of New York against Taylor Rafferty in the amount of $521,311.71.  This Judgment, however, has not been paid due to the Asset Sale, leaving Taylor

Rafferty without sufficient assets to pay the liabilities owed to him. As is discussed below, in spite of its siphoning off all of Taylor Rafferty's assets, XFL is in dire financial circumstances and its continued existence is in question.

4. Accordingly, to prevent continued irreparable harm, Petitioner seeks immediate injunctive relief (in the form of a temporary restraining order and a preliminary injunction) restraining Respondents from transferring, selling or otherwise disposing of the assets of XFL, including but not limited to the stock and assets of its subsidiary, Stone & McCarthy Research Associates, cash, revenue streams, and back accounts, in an amount sufficient to cover the amount they are indebted to Petitioner, until such time as the American Arbitration Association can address the claims Petitioner has asserted against Respondents and enter a judgment in the Pending Arbitration.

**Parties**

5. Petitioner is an individual residing in Westchester County, New York. Petitioner was an employee of Taylor Rafferty until the abrupt and wrongful termination of his employment on October 13, 2008.

6. Upon information and belief, XFL is an exempted company incorporated under the laws of the Cayman Islands, with a principal place of business in the People's Republic of China located at 2103-4 Vicwood Plaza, 199 Des Voeux Road Central, Hong Kong. Until the Asset Sale, XFL was the parent company of Taylor Rafferty. XFL is not qualified to do business in the State of

New York and, on information and belief, has no assets or operations in the State of New York.

7. Jae Lie, Wu Ji Guang, John McLean, Fredy Bush and Chen Xiaolu are natural persons who, on information and belief, are citizens and residents of the People's Republic of China and at all relevant times hereto were members of the Board of Directors of XFL located at 2103-4 Vicwood Plaza, 199 Des Voeux Road Central, Hong Kong.

8. Aloysius T. Lawn is a natural person who, on information and belief, is a citizen and resident of Pennsylvania with an address at 1409 Bramble Lane, West Chester, Pennsylvania 19380, and at all relevant times hereto was a member of the Board of Directors of XFL.

9. Jeanne L. Murtaugh is a natural person who, on information and belief, is a citizen and resident of North Carolina with an address at 10 Loch Ridge Drive, Greensboro, North Carolina 27408, and at all relevant times hereto was a member of the Board of Directors of XFL.

10. Daniel J. Connell is a natural person who, on information and belief, is a citizen and resident of Connecticut with an address at 121 Wedgewood Drive, Easton, Connecticut 06612, and at all relevant times hereto was a member of the Board of Directors of XFL.

11. David Wang is a natural person who, on information and belief, is a citizen and resident of California, and at all relevant times hereto were members of the Board of Directors of XFL.

12. Nicholas W. Schiffli, Jr. is a natural person who, on information and belief, is a citizen and resident of North Carolina with a place of business at 5232 Colony Road, Suite 200, Charlotte, North Carolina 28226, and at all relevant times hereto was a director and officer of XFL.

### Jurisdiction and Venue

13. The Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a) in that, as alleged above, Petitioner, on the one hand, and Respondents, on the other hand, are citizens or subjects of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events giving rise to the claims occurred in New York, New York.

### Factual Allegations

15. As is discussed in detail below, Petitioner obtained a Judgment against Taylor Rafferty in the amount of $521,311.71 as a result of the improper termination of his employment. Taylor Rafferty, however, at the direction of XFL, its former parent company, has disposed of its assets to prevent Petitioner from collecting on his Judgment. Therefore, the Judgment remains unpaid.

16. In the Asset Sale, XFL, as the parent company of Taylor Rafferty, sold the assets of Taylor Rafferty to D.F. King, and structured the sale so that the funds would flow directly to XFL, leaving Taylor Rafferty's creditors with nothing. By engaging in the Asset Sale, XFL left Taylor Rafferty as a shell

company with no assets, only liabilities, in part to avoid payment of the debt owed to Petitioner. As a result of their fraudulent conduct, Respondents are liable to Petitioner for the debts, including the Judgment, owed to him.

### The Employment Agreement

17. From about December 14, 1984, Petitioner worked at Taylor Rafferty, a leading investor relations firm which offers a full range of advisory and operational support to domestic and international companies.

18. On or about June 14, 2005, pursuant to the terms of an Agreement and Plan of Merger dated June 14, 2005 (the "Merger Agreement"), Taylor Rafferty became a wholly-owned subsidiary of XFL. A true and accurate copy of the Merger Agreement is annexed hereto as <u>Exhibit A</u>.

19. In connection with the Merger, Petitioner entered into an Employment Agreement dated June 14, 2005 with Taylor Rafferty pursuant to which Petitioner would remain employed with Taylor Rafferty and would receive compensation in the form of a base annual salary of $200,000 for five years, plus additional compensation and benefits. A true and accurate copy of the Employment Agreement is annexed hereto as <u>Exhibit B</u>, which was also part of the Merger Agreement as Annex A.

20. As part of the sale of Taylor Rafferty to XFL, XFL was to assume the rental payments and rental obligations for two leases for Taylor Rafferty's offices located at 205 Lexington Avenue, New York, New York and 2 Throgmorton Avenue, London, England (the "Lease Agreements").

21. The Employment Agreement was terminable by Taylor Rafferty only in the manner set forth in Paragraph 6 of the Employment Agreement, as discussed below.

22. While employed by Taylor Rafferty, Petitioner diligently performed his duties and obligations and devoted all of his working time and efforts in a manner that faithfully and diligently furthered the business and interests of Taylor Rafferty.

23. From the date he signed the Employment Agreement through the date of his wrongful termination, Petitioner adhered to the obligations imposed by the Employment Agreement. Notwithstanding the fact that Petitioner performed his duties and responsibilities in accordance with the Employment Agreement, his employment with Taylor Rafferty was abruptly terminated by XFL, without prior notice or warning, by letter dated October 13, 2008 (the "Termination Letter"). A true and correct copy of the Termination Letter is annexed hereto as <u>Exhibit C</u>. On information and belief, the Directors were part of the decision making process to terminate Petitioner's employment with Taylor Rafferty.

24. On information and belief, by terminating Petitioner's employment and then immediately seeking to dispose of Taylor Rafferty's assets, as detailed below, Taylor Rafferty was rendered a fraudulent entity.

25. Petitioner's employment was purportedly terminated for "Cause." However, none of the conduct alleged in the Termination Letter is sufficient to demonstrate Cause as defined in the Employment Agreement.

26. Pursuant to Section 6 of the Employment Agreement, Petitioner's employment with Taylor Rafferty could be terminated only under the following circumstances:

a. The death of [Mr. Rafferty];

b. If [Mr. Rafferty] shall have been unable to perform all of [his] duties hereunder by reason of illness, physical or mental disability or other similar incapacity, which inability shall continue for more than three consecutive months, or any six months in a twelve-month period ("Executive's Disability");

c. For Cause by the Employer;

d. Good Reason by Executive. In the event of termination by Executive for Good Reason upon not less than sixty days written notice, in which case Employer shall continue to pay to Executive the compensation and employee benefits provided for in Sections 4(a) and 5(a) of his Agreement for a period equal to the Date of Termination through the first anniversary of the Date of Termination; or

e. For no Cause by Employer upon not less than sixty days written notice (<u>provided</u>, that Employer shall not in any event be entitled to terminate the Employment Period without Cause during the Earn-Out Period), in which case [Mr. Rafferty] shall be entitled to receive the compensation and employee benefits provided from in Sections 4(a) and 5(a) of this Agreement for a period equal to the Date of Termination through the first anniversary of the Date of Termination.

27. Section 17 of the Employment Agreement defines Cause as:

*(1) **the willful and gross neglect of Executive's duties, or the Executive's gross negligence, in either case which materially injures either the Employer or Parent or their reputations**; (2) the conviction of a non-vehicular felony or any crime involving moral turpitude of the Executive's intentional commission of any other act or omission involving dishonesty or fraud; **(3) the willful breach of a material term of this Agreement, following reasonable notice and opportunity to cure, and a failure to so cure within thirty days after the Executive receives written***

***notice thereof***; (4) the willful, actual violation of Section 7 of this Agreement, which violation results in adverse consequences to the Employer or Parent; or ***(5) the Executive, in carrying out his duties, has without reasonable cause failed to comply with any reasonable instruction from the XFL Representative following reasonable notice and opportunity to cure, and a failure to so cure within thirty days after the Executive receives written notice thereof***. (emphasis added).

28. In the Termination Letter, Respondents purported to terminate Petitioner for Cause pursuant to Sections 17(1), (3) and (5) of the Employment Agreement. However, Respondents are unable to demonstrate Cause.

29. Moreover, the Employment Agreement provides for clear and strict terms and procedures to terminate Petitioner's employment. Respondents failed to follow these unambiguous procedures as set forth in the termination provision of the Employment Agreement, including its failure to provide reasonable notice of any alleged breach of the Employment Agreement and an opportunity to cure the alleged breach.

30. Respondents provided neither reasonable notice nor an opportunity to cure any purported breach. Therefore, Respondents' sudden and unexpected termination of Petitioner's employment was improper and in violation of the termination provisions of the Employment Agreement and the New York Labor Law.

### The Prior Arbitration and Court Actions

31. On or about November 10, 2008, Petitioner commenced an arbitration before the AAA, captioned <u>Brian J. Rafferty v. Taylor Rafferty Associates, Inc.</u>, AAA Case No. 13 166 02567 08 (the "First Arbitration"), seeking

9

payment of unpaid wages from Taylor Rafferty as a result of the improper termination of his employment.

32.   On or about November 20, 2008, Petitioner instituted an action in the Supreme Court for the State of New York, New York County, against XFL and Taylor Rafferty captioned <u>Brian J. Rafferty v. Taylor Rafferty Associates, Inc. and Xinhua Finance Limited</u>, Index No. 08-115671 (the "First State Court Action") seeking, among other relief, an injunction preventing XFL and Taylor Rafferty from disposing of the assets of Taylor Rafferty and absconding to China, leaving Taylor Rafferty without sufficient assets to cover the debts owed to Petitioner, including any award rendered in the First Arbitration.  By Stipulation and Order dated November 25, 2008 (the "State Court Order"), the parties resolved Petitioner's application seeking injunctive relief.  A true and correct copy of the State Court Order is annexed hereto as <u>Exhibit D</u>.

## The Arbitration Award and Judgment

33.   On May 18, 2009, the AAA conducted a hearing on Petitioner's claims against Taylor Rafferty.  The Arbitrator found that Taylor Rafferty had actual notice of the hearing and chose not to appear.

34.   On June 10, 2009, the Arbitrator rendered an Opinion and Award (the "Award"), finding that Petitioner's employment was terminated in violation of the Employment Agreement and that Taylor Rafferty is liable to Petitioner in the amount of $514,840.21.  A true and correct copy of the Award is

annexed hereto as <u>Exhibit E</u>.  Notice of the Award thereafter was duly given by the AAA to all parties by letter dated June 11, 2009.

35. On or about June 15, 2009, Petitioner filed and served a motion to confirm the Award in an action in the Supreme Court of the State of New York, New York County captioned <u>Brian J. Rafferty v. Taylor Rafferty Associates, Inc.</u>, Index No. 09/108480 (the "Second State Court Action").  By Judgment and Order dated July 27, 2009 (the "Judgment"), the Court granted Petitioner's motion and issued a Judgment against Taylor Rafferty in the amount of $521,311.71.  A true and correct copy of the Judgment is annexed hereto as <u>Exhibit F</u>.

36. Annexed hereto as <u>Exhibit G</u> is a copy of the Court's Order indicating that Petitioner may commence a proceeding to seek to enforce the Judgment against XFL.

37. Despite Petitioner's Judgment in the amount of $521,311.71, Petitioner has only been paid $50,299.38; the majority of the Award and Judgment remains unpaid.  Specifically, Petitioner is still owed <u>$471,012.33</u>, plus interest accruing from July 27, 2009 until payment is made on the Judgment.

38. By entering into the Asset Sale while the First Arbitration and litigations were pending, Respondents caused Taylor Rafferty to dissipate all assets in an effort to avoid paying the Judgment.  Accordingly, Respondents are liable to Rafferty for the full amount of the outstanding Judgment, and this proceeding seeks to collect the outstanding amount owed.

**The Asset Sale**

39.     On November 13, 2008, D.F. King sent a memorandum to all Taylor Rafferty employees announcing that D.F. King intended to purchase all the assets of Taylor Rafferty from XFL.  The Asset Sale has since closed and XFL has "shutdown" Taylor Rafferty as of January 31, 2009.  Annexed hereto as <u>Exhibit H</u> is a "notice" from XFL issued on March 2, 2009 to all of Taylor Rafferty's trade creditors, announcing that XFL has "shutdown" Taylor Rafferty as of January 31, 2009.

40.     On information and belief, XFL used its complete domination and control of Taylor Rafferty, its wholly-owned subsidiary, to enter into the Asset Sale and dispose of Taylor Rafferty's assets, leaving Taylor Rafferty as an insolvent shell company, in part, to thwart Petitioner's ability to collect the money that he is entitled to and/or to frustrate the enforcement of the Judgment rendered against Taylor Rafferty.  As a result of its fraudulent conduct, XFL and the Directors, who, on information and belief, approved the Asset Sale, are responsible for the liabilities of Taylor Rafferty, including Petitioner's Judgment against Taylor Rafferty.

41.     The purpose of the Asset Sale was to hinder, delay and defraud creditors, including Petitioner, and was enforced and approved by the Individual Respondents.

42.     Respondents, by selling Taylor Rafferty's assets and receiving the proceeds -- as opposed to leaving such proceeds with Taylor Rafferty -- left

Taylor Rafferty a shell entity, unable to pay its obligations, and effectively insolvent.

43. At the time of the Asset Sale, XFL was the sole shareholder of Taylor Rafferty. Additionally, at the time of the Asset Sale, all of the officers and directors of Taylor Rafferty were XFL employees, officers and/or directors. Thus, at the time of the Asset Sale, XFL exercised complete dominance and control over Taylor Rafferty and its business affairs.

44. XFL entered into the Asset Sale and knowingly and intentionally structured it in such a way as to leave insufficient assets to pay its present and future creditors, including but not limited to Petitioner.

45. Once the Asset Sale was complete and XFL had sold the assets of Taylor Rafferty (but not the liabilities), Taylor Rafferty withdrew from the First Arbitration and allowed the Award and Judgment to be entered against it because XFL had successfully dissipated Taylor Rafferty's assets such that Petitioner would be unable to collect on his Judgment. This is improper and the structure of the Asset Sale -- literally stripping Taylor Rafferty's assets off to XFL, leaving it without sufficient funds to pay its creditors, including Petitioner, is fraudulent.

### The Lease Agreements

46. Respondents' Asset Sale also put Petitioner at risk for the remainder of the Lease Agreements. When the Lease Agreements were entered into, Petitioner executed a Guaranty to the landlord regarding the timely payment of rent (the "Guaranty"). As part of the Merger, XFL, as owner of Taylor Rafferty,

was to assume the rental payments and rental obligations under the Lease Agreements for Taylor Rafferty's office space in New York and London. XFL, however, never completed the assignment of the Lease Agreements as it was obligated to do.

47. After XFL transferred Taylor Rafferty's assets to D.F. King in the Asset Sale, it shut down Taylor Rafferty's office space and defaulted on the Lease Agreements, thereby leaving Petitioner in peril under the Guaranty.

48. After Petitioner commenced the First State Court Action and XFL and Taylor Rafferty filed sworn affidavits stating that they had no intention of defaulting on the Lease Agreements, XFL and Taylor Rafferty did exactly what they said they would not do and failed to pay the rent due on Taylor Rafferty's New York office.

49. As a result, on or about September 15 2009, the landlord for Taylor Rafferty's New York office commenced an action against, among others, Petitioner seeking to collect the unpaid rent that XFL and Taylor Rafferty failed to pay. Petitioner is out in excess of $20,000 due to this lawsuit. Pursuant to the terms of the Merger Agreement and the common law, Petitioner is entitled to indemnification from XFL for any money he is required to pay to the landlord for Taylor Rafferty's unpaid rent.

### XFL's Financial Distress

50. XFL is in current financial distress, which only highlights the importance of Petitioner's claims being considered expeditiously.

51. In XFL's Financial Summary for the Third Quarter of Fiscal Year ending December 31, 2010, a true and accurate copy of which is annexed hereto as Exhibit I, under the section entitled "Material phenomena regarding its ability to continue as a going concern," XFL states that: "due to continuing net operating loss and cash used in operating activities in the third consolidated quarter of fiscal period ending December 31, 2010, there is substantial doubt about the group's ability to continue as a going concern."

52. XFL's Third Quarter report makes clear that XFL's continued existence is in question. XFL's series of wrongful conduct has jeopardized its very existence, and it should be held to answer for its misconduct toward Petitioner and to pay the amount owed on the Judgment before its assets are completely dissipated.

### XFL's Bad Acts

53. XFL has a history of bad acts, corporate governance issues, and questionable dealings in the United States. XFL and its former Chief Executive Officer, respondent Fredy Bush, have faced allegations of self-dealings and questionable business dealings. In addition, XFL and Bush have faced numerous lawsuits from investors, been accused of failing to disclose material facts about the company in offering prospectus materials, and faced substantial defections of executives and staff. Annexed hereto as Exhibit J are some media articles detailing the questionable acts and dealings of XFL.

54. XFL and Bush have also faced scrutiny for a web of transactions between XFL and its top executives that were allegedly enormously profitable to Bush. In addition, according to media sources, Bush was alleged by the Internal Revenue Service to have engaged in tax fraud. See Exhibit J.

55. XFL's transgressions continue to this day. It appears that XFL and some of its insiders are currently under investigation by the United States Attorney's office in Washington, D.C. for certain fraudulent transactions that enriched the insiders. Annexed hereto as Exhibit K is a March 2, 2010 article from Dow Jones Newswires discussing the U.S. Attorney's office's investigation into XFL and its' insiders. The U.S. Attorney's office is examining transactions in which more than $25 million in cash, securities and other items of value were allegedly fraudulently routed from XFL under false pretenses to three company insiders from 2004 to 2008. Two of the insiders are alleged to be Ms. Bush (XFL's former CEO), and Shelly Singhal, a former XFL board member and investment banker.

56. XFL's sale of Taylor Rafferty's assets to avoid payment of its liabilities, which occurred after the First Arbitration and the pendency of the State Court Actions, appears to be but one more suspicious transaction in a series of questionable dealings by XFL.

57. Unless Respondents are immediately restrained and enjoined, Petitioner will be severely and irreparably injured and without an avenue to collect from Respondents for the amount they are indebted to him.

## COUNT I
### (Fraudulent Conveyance -- NY Debtor and Creditor Law §§ 270 et seq. -- Against Respondents)

58. Petitioner realleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 hereof.

59. Respondents entered into the Asset Sale with an actual or constructive intent to hinder, delay and defraud creditors, including Petitioner.

60. Respondents entered into the Asset Sale and knowingly and intentionally structured it in such a way as to leave insufficient assets to pay its present and future creditors, including but not limited to Petitioner.

61. Respondents' actions to transfer assets to XFL and other entities violate the New York Uniform Fraudulent Conveyance Act, NY Debtor and Creditor Law §§ 270 et seq.

62. As a direct and proximate result of the Respondents' fraudulent transfer of assets, Petitioner has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Petitioner is entitled to a temporary restraining order and a preliminary injunction.

## COUNT II
### (Fraud -- Against Respondents)

63. Petitioner realleges and incorporates by reference the allegations set forth in paragraphs 1 through 62 hereof.

64. Respondents materially misrepresented the purpose of the Asset Sale and instead entered into the Asset Sale with an actual or constructive intent to hinder, delay and defraud creditors, including Petitioner.

65. Respondents entered into the Asset Sale with the intent to defraud and knowingly and intentionally structured it in such a way as to leave insufficient assets to pay its present and future creditors, including but not limited to Petitioner.

66. Petitioner reasonably relied on and was damaged as a result of Respondents' fraud.

67. As a direct and proximate result of the Respondents' fraud, Petitioner has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Petitioner is entitled to a temporary restraining order and a preliminary injunction.

## COUNT IIII
### (Shareholder Liability/Pierce the Corporate Veil -- As To XFL)

68. Petitioner realleges and incorporates by reference the allegations set forth in paragraphs 1 through 67 hereof.

69. At the time of the Asset Sale, XFL was the sole shareholder of Taylor Rafferty. Additionally, at the time of the Asset Sale, all of the officers and directors of Taylor Rafferty were XFL employees, officers and/or directors. Thus, at the time of the Asset Sale, XFL exercised complete dominance and control over Taylor Rafferty and its business affairs

70. XFL entered into the Asset Sale and knowingly and intentionally structured it in such a way as to render Taylor Rafferty effectively insolvent, with insufficient assets to pay its present and future creditors, including but not limited to Petitioner.

71. Pursuant to the Asset Sale, XFL effectively sold Taylor Rafferty's assets and received the proceeds from such sale, without leaving sufficient assets (or proceeds from the asset sale) in Taylor Rafferty sufficient to pay Taylor Rafferty's present and future creditors, including Petitioner.

72. As a direct and proximate result of the XFL's misconduct, Petitioner has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Petitioner is entitled to a temporary restraining order and a preliminary injunction.

WHEREFORE, Petitioner respectfully requests that this Court enter an award in his favor as follows:

A. Granting Petitioner a temporary restraining order and preliminary injunction in aid of arbitration enjoining and restraining Respondents from transferring, selling or otherwise disposing of the assets of XFL in an amount sufficient to satisfy the liabilities owed to Petitioner;

B. Awarding compensatory and consequential damages in amounts to be proved at trial;

C. Awarding exemplary and punitive damages in amounts to be proved at trial;

D. Awarding pre-judgment interest as allowed by law;

E. Awarding attorneys' fees and costs, pursuant to the New York Uniform Fraudulent Conveyances Act, or as otherwise applicable; and

F. Such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          January 6, 2011

                      PADUANO & WEINTRAUB LLP

                      By: _____
                          Anthony Paduano (AP 8400)
                          Steven Castaldo (SC 0520)
                      1251 Avenue of the Americas
                      Ninth Floor
                      New York, New York 10020
                      (212) 785-9100

                      Attorneys for Petitioner